Arturo Matthews, CA Bar No. 145232
Of Counsel, Hyslip & Taylor LLC LPA
2512 Chambers Rd., Suite 105
Tustin, CA 92780
Phone: 714-647-7110
Fax: 714-647-5558
aem@matthewsfirm.net

Attorney for Plaintiff, Jefferey Puglisi

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| JEFFEREY PUGLISI,<br><br>  Plaintiff,<br><br>v.<br><br>RICHARD JAMES & ASSOCIATES, INC.,<br><br>  Defendant. | Case No. 5:17-cv-01567<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Jefferey Puglisi ("Jefferey"), is a natural person who resided in Rancho Cucamonga, California, at all times relevant to this action.

2. Defendant, Richard James & Associates, Inc. ("RJ&A") is a Washington corporation that maintained its principal place of business in Vancouver, Washington, at all times relevant to this action.

1

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. At all times relevant to this action, RJ&A collected consumer debts.

6. RJ&A regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of RJ&A'S revenue is debt collection.

8. RJ&A is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, RJ&A contacted Jefferey to collect a debt that was incurred primarily for personal, family, or household purposes.

10. Specifically, the debt incurred was from a home security system that was installed in Jefferey's residence.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Jefferey is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Around February 2016, Jefferey received a letter from Parker Stanbury, LLP in connection with the collection of a debt related to a personal purchase.

14. In this letter, Parker Stanbury, LLP properly indicated the debt was a consumer debt and provided the required debt collector disclosures under the FDCPA.

15. Furthermore, in this letter, Parker Stanbury LLP provided the necessary disclosures under the Rosenthal Fair Debt Collection Practices Act which applies to consumer debts.

16. On information and belief, the debt was later placed with RJ&A.

17. On or around March 22, 2017, RJ&A began calling Jefferey on his cellular phone.

18. Later the same day, RJ&A called Jefferey at his place of employment and left a message with the receptionist.

19. RJ&A identified itself by name and left a call back number for Jefferey to return RJ&A's call.

20. At the time of this communication, RJ&A already had Jefferey's location information.

21. In addition, on March 22, 2017, RJ&A representative Phil Allen ("Mr. Allen") sent an email to Jefferey at Jefferey's place of employment.

22. This email was received by the management department ("Management") at Jefferey's place of employment.

23. This email disclosed the existence of the debt to Management.

24. This email threatened "derogatory credit reporting" or "further action" if Jefferey didn't resolve the claim.

25. On March 31, 2017, Jefferey sent a cease and desist letter to RJ&A via certified mail.

26. In this letter, in addition to the cease and desist request, Jefferey also disputed the debt.

27. RJ&A received Jefferey's letter on April 3, 2017.

28. Despite this cease and desist request, RJ&A continued to call Jefferey on Jefferey's cellular phone in connection with the collection of the debt.

29. On at least one occasion, RJ&A threatened to go after the assets of the business, which was a misrepresentation as the alleged debt was a personal debt, not a business debt.

30. On or around April 20, 2017, Mr. Allen left a voice message on Jefferey's cellular phone.

31. In this voice message, Mr. Allen acknowledged receipt of Jefferey's cease and desist letter.

32. In this voice message, Mr. Allen indicated there was no dispute, that Jefferey owed the debt and left a call back number.

33. On or around April 25, 2017, Mr. Allen left another voice message on Jefferey's cellular phone.

34. In this voice message, Mr. Allen stated Jefferey's dispute of the debt was frivolous and that Jefferey needed to get it "squared away".

35. Thereafter, another RJ&A representative, Wayne Jefferies (Mr. Jefferies") left multiple voice messages on Jefferey's cellular phone, including May 12, 2017 and May 17, 2017.

36. These voice messages included Mr. Jefferies name, a call back number and a reference number.

37. On or around May 22, 2017, Mr. Jefferies left another voice message on Jefferey's cellular phone.

38. In this voice message, Mr. Jefferies stated that Jefferey's account had been put on Mr. Jefferies desk for "review and authorization to file suit"; however, if Jefferey wished to clear the issue up on a voluntary out of court basis, Jefferey should call Mr. Jefferies.

39. On or around June 7, 2017, RJ&A sent a collection letter, signed by Mr. Jefferies, addressed to Jefferey's employer, ReMax Champions ("ReMax").

40. This letter indicated the "debtor" was ReMax; Jefferey's name was not included in the letter.

41. The alleged debt was a personal debt, not a business debt.

42. The debt was incurred solely in the name of Jefferey for Jefferey's personal use.

43. ReMax is not an obligor for the debt.

44. This letter indicated that in 5 business days the account would be forwarded to an attorney for filing a lawsuit.

45. Over five business days have passed and the account was not forwarded to an attorney nor was suit filed.

46. On August 2, 2017, a RJ&A representative, Art left a threatening message on Jefferey's work phone demanding payment by the week's end, and stated that the failure to pay would result in "full pursuit in Small Claims Court with the goal of impacting [his] Real Estate license".

47. The voicemail also indicated that RJ&A had received Jefferey's cease and desist letter but indicated "that wouldn't work because this is a commercial account".

48. The voicemail also threatened that if Jefferey didn't pay there would be additional court costs and attorney fees added to the balance.

49. Additionally, Art state that the case against Jefferey was "bullet proof" and that RJ&A "would win" and Art stated, "if I were you I would choose your next move *wisely"* in a very threatening tone.

50. Art concluded the message with his telephone number, his extension, and demanded a call by the end of the week or he will "make his recommendation to proceed judgment against [him] by Friday" and at that time it would get "really expensive".

51. RJ&A never provided the required notice under 15 U.S.C. § 1692g(a)

52. RJ&A never disclosed that they are "a debt collector attempting to collect a debt".

53. RJ&A's collection efforts, including but not limited to its telephone calls, caused Jefferey emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

54. RJ&A's collection efforts also intruded upon Jefferey's privacy.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

55. Jefferey re-alleges and incorporates by reference Paragraphs 5 through 54 above as if fully set forth herein.

56. RJ&A violated 15 U.S.C. § 1692c(b) by communicating with a third party in connection with the collection of the debt without Jefferey's consent.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

57. Jefferey re-alleges and incorporates by reference Paragraphs 5 through 54 above as if fully set forth herein.

58. RJ&A violated 15 U.S.C. § 1692c(c) by communicating with Jefferey with respect to the debt notwithstanding its receipt of written instructions to cease communications with Jefferey.

# COUNT THREE

## Violation of the Fair Debt Collection Practices Act

59. Jefferey re-alleges and incorporates by reference Paragraphs 5 through 54 above as if fully set forth herein.

60. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

61. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

62. The likely effect of RJ&A's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Jefferey.

63. RJ&A violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Jefferey in connection with the collection of the debt.

## COUNT FOUR

**Violation of the Fair Debt Collection Practices Act**

64. Jefferey re-alleges and incorporates by reference Paragraphs 5 through 54 above as if fully set forth herein.

65. RJ&A violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FIVE

**Violation of the Fair Debt Collection Practices Act**

66. Jefferey re-alleges and incorporates by reference Paragraphs 5 through 54 above as if fully set forth herein.

67. RJ&A violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT SIX

**Violation of the Fair Debt Collection Practices Act**

68. Jefferey re-alleges and incorporates by reference Paragraphs 5 through 54 above as if fully set forth herein.

69. RJ&A violated 15 U.S.C. § 1692g by not providing the requisite disclosure within five (5) days of the initial communication.

## JURY DEMAND

70. Jefferey demands a trial by jury.

## **PRAYER FOR RELIEF**

71. Jefferey prays for the following relief:

    a. Judgment against RJ&A for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: August 4, 2017        By:  /s/ Arturo E. Matthews, Jr.
                                           Attorney for Plaintiff